## HINKLE v. EICHELBERGER.

An executor, having paid a legacy, is incompetent as a witness to establish the will on an issue of devisavit vel non.

ERROR to the Common Pleas of Adams county.

*May* 19.—The question arose, in this case, on the trial of an issue of devisavit vel non, in which the plaintiffs called one of the executors as witness; he was objected to. The facts were these: the will contained a power to sell lands, and a direction to pay a legacy to the widow of testator. It was shown a sale had been made, but releases from the purchasers were produced. An account filed by the executors in the Orphans' Court was then produced, taking a credit, among other things, for the payment of the legacy. The court admitted the witness. This was the only point argued here.

*Fisher*, for plaintiff in error.

*Mayer* and *Evans*, for defendant in error.

*June* 1. GIBSON, C. J.—The official character of an executor, independent of acts done in it, is not enough to exclude him as a witness on the trial of an issue like the present. But it is said, that as the executor, in this instance, paid a legacy to the widow, he has an interest to that extent in establishing the will. What would be the legal effect of revoking the probate? Where a grant of administration is originally void, all acts done under it will be also void. In Wolley *v.* Clark, 5 B. & Ad. 744, trover was maintained by the executor of a subsequent will against the executor of a previous one, whose probate had been revoked, even on citation; and it was consequently held, that the disposal of the assets by the first executor was, in point of legal effect, a conversion of them to his use, and an act done without authority. And the defendant was not allowed to show, even in mitigation of damages, that he had administered assets to the amount. In like manner, detinue was maintained in Graysbrook *v.* Fox, Plowd. 267, by an executor against a purchaser of assets from one who had obtained letters of administration before the executor had proved the will. If this probate be revoked, therefore, the payment of the legacy will be void, and the witness will be liable, without regard to it, for whatever came from the personal estate, unless the neglect of the register to grant administration pendente lite, at the entry of the caveat,

should make a difference. It is one of the sore evils of our plan of selecting the executive officers of the law, and of the popular principle of rotation, that the knowledge and skill which are imparted by experience alone are nowhere to be found, and that the routine of the most ordinary duties is forgotten. This executor was, it seems, suffered to proceed under his testamentary letters; and what validity will his acts have should the probate be revoked? Strictly, none; but, by the most benign interpretation, no more than those of an administrator pendente lite, whose power is limited to collection of the assets and payment of the debts. It is his business, not to consult the will, but to hand over the assets to his successor; and that he has no authority to pay legacies was determined in Ellmaker's estate, 4 Watts, 34; The Commonwealth v. Materr, 16 Serg. & Rawle, 416; and Adair v. Shaw, 1 Sch. & Lef. 254; though it was said, in the last of those cases, that he is to be allowed for a bonâ fide payment, but, of course, only when the will is established. Now, the revocation of the probate in this instance would certainly burden him with the loss of the money paid to the widow, unless he could recover it back. But he paid it voluntarily, as well as with full knowledge of the circumstances; and she might retain it as conscientiously as did the creditor in Carson v. McFarlane, 2 Rawle, 218, who had received a voluntary payment of more than his proportional part of the assets of an insolvent estate. Though the action for money had is a liberal one, and lies, it is said, whenever a party has received money which he is bound by natural justice to refund, it has never been extended to money received without unfair practice or deceit, though the receiver could not have recovered it by law. Such is the principle of Irvine v. Hanlen, 10 Serg. & Rawle, 219; Morris v. Tarin, 1 Dall. 148; Bogert v. Nevins, 6 Serg. & Rawle, 369; Farmer v. Arundel, 2 Bl. R. 285; and Lowry v. Bourdieu, 1 Doug. 468. In the last of these, it was ruled that a person insured without interest could not recover back the premium, on the ground that the risk had not attached; and though Lord Mansfield put the decision on the maxim of pari delicto, there is no doubt that such a case would be ruled in the same way here, though we have no statute which declares such a policy to be illegal. The argument that a witness might set up his payment as a defence to an action by the widow, who would be entitled to administration, is without force, for he could make no defence against her suing, as she would sue, in auter droit, which he would not make against any one else; and he would be compelled to account to her as if nothing had been paid. This objection to his competency, therefore, is decisive; not so the objection to it for his original liability on the covenant, that

he and his colleagues had authority to sell the decedent's land, from which he was released. If he were not liable to the purchasers, he could not be liable to any one else.

Judgment reversed, and a venire de novo awarded.