## C. W. MILLER v. H. H. HULME, EXR.

ERROR TO THE COURT OF COMMON PLEAS OF COLUMBIA COUNTY.

Argued April 17, 1889—Decided May 6, 1889.

[To be reported.]

In the absence of proof of a contract so to do, a distributee is not bound to refund a voluntary over-payment made by an administrator, and such obligation cannot be imposed upon him by his attorney, without express authority therefor.

| | |
|---|---|
| 126 | 277 |
| 153 | 479 |
| 126 | 277 |
| 164 | 596 |
| 126 | 277 |
| .180 | 635 |
| 126 | 277 |
| 198 | 50 |
| 126 | 277 |
| e208 | 639 |
| 126 | 277 |
| e 35 SC | 365 |

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 279½ January Term 1889, Sup. Ct.; court below, No. 43 February Term 1887, C. P.

On December 24, 1886, H. H. Hulme, executor of the will of Samuel Appleman, deceased, brought assumpsit against Charles W. Miller. Issue.

At the trial on October 2, 1888, before HINCKLEY, P. J., the plaintiff showed that the defendant, as the attorney of Samuel Appleman, in his lifetime the guardian of Otis Pealer, a minor, had received on April 6, 1885, in the distribution of the estates of Daniel, Ira, and Elias Pealer, deceased, sums of money aggregating $182.29, due to Otis Pealer from said estates. The defendant, as a defence to the payment of the money so received by him, set up, first, that he was entitled to compensation out of it for professional services rendered to Mr. Appleman, in the said several estates; and second, that as to the balance that might remain he had received it as the attorney of Alva Pealer, a creditor of the estate of Catharine Pealer, in the manner following:

Catharine Pealer, the mother of Daniel, Ira, and Elias Pealer, had died, and in 1879, Hiram and Eli Pealer, her administrators, settled an account showing a balance in their hands of $2,551.81. An auditor was appointed to make distribution of this fund, before whom Alva Pealer appeared as a creditor, represented by C. W. Miller, the defendant, as his attorney. After finding the amount due to Alva Pealer, the only creditor, and deducting the expenses of the audit, there was distributable to Savilla, Hiram, Enos, Eli, Alva and Otis Pealer, the heirs then living, to each the sum of $309.13. But receipts were produced showing that the administrators had paid to Enos and Hiram Pealer, and to Samuel Appleman, guardian of Otis Pealer, each $425.30, or $116.17 in excess of the sum payable to each. In the proceedings before the auditor, Enos, Hiram and Eli were represented as heirs, and Hiram and Eli as accountants, by Mr. Samuel Knorr; and Alva Pealer, as creditor, and Alva, Otis and Savilla as heirs, by Mr. C. W. Miller, the defendant. The auditor's report showed the following:

" It was agreed by the counsel representing all the parties

concerned in the case as follows, Mr. Miller making the proposition :

" If the auditor finds difference between dower $1,275.03, and payments on mortgage, $752.92, due claimant, then he for claimant will take assignment of over-payments to those already paid, and not require it from the administrator."

Upon the foregoing facts, the defendant, alleging that, acting upon this agreement, his client Alva Pealer was awarded by the auditor such an amount only as with the three over-payments of $116.17 each, made the amount of his claim in full, urged that the agreement before the auditor operated as an assignment to Alva Pealer of $116.17, the over-payment made by the accountants to Samuel Appleman, as guardian of Otis Pealer ; and, to show these facts he offered in evidence the auditor's report in the estate of Catharine Pealer, deceased, filed to No. 21 December Term 1879, and duly confirmed. Objection being made, the court refused the offer, on the ground that the auditor's report did not show an assignment to have been made in pursuance of the agreement.

Testimony having been adduced showing the services rendered to the plaintiff's testator by the defendant, the court submitted the case to the jury who returned a verdict in favor of the plaintiff for the sum of $128.84. A rule for a new trial having been discharged the defendant took this writ, assigning as error the refusal of his offer of the auditor's report in evidence.

*Mr. John G. Freeze* (with him *Mr. Charles G. Barkley*), for the plaintiff in error.

*Mr. E. H. Little* (with him *Mr. Robert R. Little*), for the defendant in error.

OPINION, MR. JUSTICE CLARK :

This action was brought by H. H. Hulme, executor of the last will and testament of Samuel Appleman, deceased, to recover from Charles W. Miller, Esquire, $182.29, received by him as attorney for Samuel Appleman, who, in his lifetime, was the guardian of Otis Pealer, in the distribution of the estates of Daniel, Ira, and Elias Pealer, deceased. The defend-

ant does not deny that the money is in his hands, but he alleges that whilst he receipted for it as the attorney of Appleman, guardian, etc., it was, by virtue of an arrangement previously made, applicable to a debt due Alva Pealer, for whom Miller was also acting as an attorney.

The matters alleged by way of defence are in substance as follows: That in the distribution of the estate of Catharine Pealer, deceased, Alva Pealer was entitled as a creditor to a claim of $959.14; but certain of the heirs of that estate, viz.: Otis, Hiram, and Enos Pealer, had each already received $116.17 beyond their distributive shares, by means whereof the administrators were wanting in funds to complete the distribution; that the parties in interest were represented as follows: Enos, Hiram, and Eli, as heirs, and Hiram and Eli, as accountants, by Samuel Knorr, Esq.; Alva, as a creditor, and Otis, Alva, and Savilla, as heirs, by Charles W. Miller, Esq.; that all the parties being thus represented it was agreed by counsel that Alva Pealer should have the benefit, by assignment, of the overpayments stated, and that he should accept them in part payment of his claim; that, acting upon this agreement of counsel, the auditor allowed Alva only $610.63, which with the three over-payments of $116.17 each, amounted to $959.14, the full value of his claim, and that thereupon Alva became and was entitled to receive from the other estates as they fell in, money that if no error had been made, would have gone to Appleman, as guardian of Otis Pealer, for repayment of the sum received by him more than his distributive share.

To establish these facts, the defendant offered in evidence the report of the auditor, which was refused by the court upon the ground that no assignments were shown to have been made in pursuance of the agreement alleged. It is true there was no formal or written assignment, but the agreement to assign was noted by the auditor on his report and the adjudication is based upon it. The report was not receivable in evidence for the purpose for which it was offered, but it was proper evidence to show that the claim of Alva was presented to the auditor; that it was adjudicated in his favor, and was allowed to the amount of $610.63, only, under the alleged agreement of counsel; but as between Appleman and Miller it would not be competent proof of the agreement on part of Appleman to repay

the money.   It is not pretended that Appleman was present in person at the time, or that he then or afterwards agreed to pay the $116.17 to Alva.   It does not even appear that Miller made, or undertook to make any such agreement for him : according to the memorandum made by the auditor, Miller simply agreed to accept an assignment, in part payment of Alva's claim— that and no more ; and if he had, we think, without proof of express authority, he would not in such a case be bound by the action of his attorney.   The over-payment to Appleman appears to have been voluntary, and he was not legally bound to refund.   " When an administrator pays out money," says our brother PAXSON in Montgomery's Appeal, 92 Pa. 206, " he is presumed to know the condition of the estate.   The assets are in his hands, and he is familiar with their amount and value. He ought to know, and is chargeable with knowledge of the amount of claims against the estate, when he makes a payment on account of a distributive share.   It would be a great hardship upon distributees to whom an administrator has voluntarily made payments on account of their shares, if they may be called upon for repayment after the lapse of years.   They may have spent it, or increased their style of living in entire good faith and in ignorance of any over-payment."   So here, the guardian may have expended the money, or made himself liable for his ward upon the faith of it.   That the payment must be regarded as a voluntary payment, is settled by numerous cases : Carson v. McFarland, 2 R. 118 ; Hinkle v. Eichelberger, 2 Pa. 483 ; Edgar v. Shields, 1 Gr. 361 ; Natcher v. Natcher, 47 Pa. 496.   An attorney by virtue of his employment as such, merely, has no general power to create and impose a legal obligation on his client under such circumstances.

As Appleman had received money from the estate of Catharine Pealer, deceased, to which, in good conscience, he was not at the time entitled, there was, perhaps, a moral obligation to repay : it may be, also, that Alva's partial relinquishment of his right to participate in the fund in relief of the administrators and in aid of the distribution, was a sufficient consideration to support an agreement ; yet, as we have said, it does not appear in the proofs that any such agreement was at any time made, either by Appleman or by any one for him.

Moreover, Miller was not only the attorney for Otis Pealer,

or his guardian, but also for Alva, and even if the power to bind Appleman might be implied from his professional relation, merely, it would certainly not be competent for him, of his own motion, as attorney for the former, to make a contract with himself, as attorney for the latter, which would bind Otis or his guardian for repayment of the money.

In the absence of any proof or of any offer to prove an express agreement on the part of Appleman to refund this money, or of an agreement to that effect made under his direction, or approved or ratified by him, the report of the auditor was rightly refused.

We have no doubt Mr. Miller throughout this whole transaction acted in the utmost good faith, with the intention of saving trouble and litigation, but according to the admitted facts, the law is clearly against his right to retain the money.

The judgment is affirmed.